## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA - DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Davis Road and Oakwood Lane, Valley Forge, PA 19482

Address of Defendant: 1251 Sequoia Road, Cherry Hill, NJ 08003 and 9040 Pennsauken Highway, Pennsauken, NJ 08110

Place of Accident, incident or Transaction: Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities?                    Yes ☐   No ☒

*RELATED CASE IF ANY*

Case Number:  06-3056         Judge R.F. Kelly         Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                     Yes ☐  No ☒

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                     Yes ☒  No ☐

3.   Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                     Yes ☐  No ☒

CIVIL:  (Place X in *ONE CATEGORY ONLY*)

A.   *Federal Questions Cases:*                          B.   Diversity Jurisdiction Cases:

1.  ☐  Indemnity Contract, Marine Contract, and All Other Contracts        1.  ☐  Insurance Contract and Other Contracts
2.  ☐  FELA                                              2.  ☐  Airplane Personal Injury
3.  ☐  Jones Act - Personal Injury                       3.  ☐  Assault, Defamation
4.  ☐  Antitrust                                         4.  ☐  Marine Personal Injury
5.  ☐  Patent                                            5.  ☐  Motor Vehicle Personal Injury
6.  ☐  Labor-Management Relations                        6.  ☐  Other Personal Injury (Please specify)
7.  ☐  Civil Rights                                      7.  ☐  Products Liability
8.  ☐  Habeas Corpus                                     8.  ☐  Products Liability - Asbestos
9.  ☐  Securities Act(s) Cases                           9.  ☐  All other Diversity Cases
10. ☐  Social Security Review Cases                             (Please specify)
11. ☒  All other Federal Question Cases                  Pennsylvania common law (breach of contract)
        (please specify)  ERISA

### ARBITRATION CERTIFICATION
*(Check appropriate category)*

I, _____, counsel of record do hereby certify:

☐   Pursuant to Local Civil Rule 8, Section 4(a)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $100,000 exclusive of interest and cost;
☐   Relief other than monetary damages is sought.

DATE:  10-31-07              Eric J. Schreiner                 76721
                            Attorney-at-Law                  Attorney I.D. #

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously termination action in this court except as noted above.

DATE:  10-31-07              Eric J. Schreiner                 76721
                            Attorney-at-Law                  Attorney I.D. #

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Warehouse Employees Local 169 and Employers Joint Pension Fund; Joseph Lyons, Brian Riece, Michael Zachwieja, Edward McDermott, Raymond Tarnowski, Michael J. Lorenca, George Czuba and Their Successors as Trustees of the Warehouse Employees Local 169 and Employers Joint Pension Fund | Printers, Inc. and TPG Graphics, Inc.  NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**  Eric J. Schreiner, Esq. Paul E. Bomze, Esq. Kleinbard Bell & Brecker, LLP One Liberty Place, 46th Floor 1650 Market Street Philadelphia, PA  19103 215-568-2000 | **ATTORNEYS (IF KNOWN)** |

| II.   BASIS OF JURISDICTION *(PLACE AN X IN ONE BOX ONLY)* | III.   CITIZENSHIP OF PRINCIPAL PARTIES *(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)* (For Diversity Cases Only) |
|---|---|

**II.   BASIS OF JURISDICTION** *(PLACE AN X IN ONE BOX ONLY)*

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** *(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.       NATURE OF SUIT** *(PLACE AN X IN ONE BOX ONLY)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110  Insurance ☐ 120  Marine ☐ 130  Miller Act ☐ 140  Negotiable Instrument ☐ 150  Recovery of Over-payment & Enforcement of Judgment ☐ 151  Medicare Act ☐ 152  Recovery of Defaulted Student Loans (Excl. Veterans) ☐ 153  Recovery of Over-payment of Veteran's Benefits ☐ 160  Stockholders' Suits ☒ 190  Other Contract ☐ 195  Contract Product Liability | **PERSONAL INJURY** ☐ 310  Airplane ☐ 315  Airplane Product Liability ☐ 320  Assault, Libel & Slander ☐ 330  Federal Employers' Liability ☐ 340  Marine ☐ 345  Marine Product Liability ☐ 350  Motor Vehicle ☐ 355  Motor Vehicle Product Liability ☐ 360  Other Personal Injury | **PERSONAL INJURY** ☐ 362  Personal Injury – Med Malpractice ☐ 365  Personal Injury – Product Liability ☐ 368  Asbestos Personal Injury Product Liability **PERSONAL PROPERTY** ☐ 370  Other Fraud ☐ 371  Truth in Lending ☐ 380  Other Personal Property Damage ☐ 385  Property Damage Product Liability | ☐ 610  Agriculture ☐ 620  Other Food & Drug ☐ 625  Drug Related Seizure of Property 21 USC 881 ☐ 630  Liquor Laws ☐ 640  RR & Truck ☐ 650  Airline Regs ☐ 660  Occupational Safety/Health ☐ 690  Other | ☐ 422  Appeal 28 USC 158 ☐ 423  Withdrawal 28 USC 157 **PROPERTY RIGHTS** ☐ 820  Copyrights ☐ 830  Patent ☐ 840  Trademark | ☐ 400  State Reapportionment ☐ 410  Antitrust ☐ 430  Banks and Banking ☐ 450  Commerce/ICC Rates/etc. ☐ 460  Deportation ☐ 470  Racketeer Influenced and Corrupt Organizations ☐ 810  Selective Service ☐ 850  Securities/Commodities/ Exchange ☐ 875  Customer Challenge 12 USC 3410 ☐ 891  Agricultural Acts ☐ 892  Economic Stabilization Act ☐ 893  Environmental Matters ☐ 894  Energy Allocation Act ☐ 895  Freedom of Information Act ☐ 900  Appeal of Fee Determination Under Equal Access to Justice ☐ 950  Constitutionality of State Statutes ☐ 890  Other Statutory Actions |
| **REAL PROPERTY** ☐ 210  Land Condemnation ☐ 220  Foreclosure ☐ 230  Rent Lease & Ejectment ☐ 240  Torts to Land ☐ 245  Tort Product Liability ☐ 290  All Other Real Property | **CIVIL RIGHTS** ☐ 441  Voting ☐ 442  Employment ☐ 443  Housing/ Accommodations ☐ 444  Welfare ☐ 440  Other Civil Rights | **PRISONER PETITIONS** ☐ 510  Motions to Vacate Sentence Habeas Corpus: ☐ 530  General ☐ 535  Death Penalty ☐ 540  Mandamus & Other ☐ 550  Other | **LABOR** ☐ 710  Fair Labor Standards Act ☐ 720  Labor/Mgmt. Relations ☐ 730  Labor/Mgmt. Reporting & Disclosure Act ☐ 740  Railway Labor Act ☐ 790  Other Labor Litigation ☒ 791  Emp. Ret. Inc. Security Act | ☐ 861  HIA (1395ff) ☐ 862  Black Lung (923) ☐ 863  DIWC/DIWW (405(g)) ☐ 864  SSID Title XVI ☐ 865  RSI (405(g)) **FEDERAL TAX SUITS** ☐ 870  Taxes (U.S. Plaintiff or Defendant) ☐ 871  IRS - Third Party 26 USC 7609 | |

**VI.   ORIGIN** *(PLACE AN X IN ONE BOX ONLY)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI.   CAUSE OF ACTION** *(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)*      Sections 502(a), (e), (f), and (g) and 4301(a), (b), and (c) of ERISA, 29 USC § 1132(a), (e), (f) and (g) and 1451(a), (b), and (c).

**VII.   REQUESTED IN COMPLAINT:**   CHECK IF THIS IS A CLASS ACTION   ☐ UNDER F.R.C.P. 23   **DEMAND**    Check YES only if demanded in complaint:  **JURY DEMAND:**   ☐ Yes   ☐ No

**VIII.   RELATED CASE(S) (See instructions):**   IF ANY   Warehouse Employees Local 169, et al. v. Printers, Inc.   JUDGE :   R.F. Kelly   DOCKET NUMBER   06-3056

| DATE 10/31/07 | SIGNATURE OF ATTORNEY OF RECORD   *Eric J. Schreiner*   10/31/07 |
|---|---|

{00183752;v1}

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Warehouse Employees Local 169 and | : | CIVIL ACTION |
| Employers Joint Pension Fund; Joseph Lyons, | : | |
| Brian Riece, Michael Zachwieja, Edward | : | |
| McDermott, Raymond Tarnowski, Michael J. | : | |
| Lorenca, George Czuba and Their Successors | : | NO. |
| as Trustees of the Warehouse Employees Local | : | |
| 169 and Employers Joint Pension Fund, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| Printers, Inc. and TPG Graphics, LLC, | : | |
|     Defendants | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)   Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                 ( )

(b)   Social Security – Cases requesting review of a decision of the Secretary of Health and
Human Services denying plaintiff Social Security Benefits.                              ( )

(c)   Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d)   Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                   ( )

(e)   Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by the
court. (See reverse side of this form for a detailed explanation of special management
cases.)                                                                                 ( )

(f)   Standard Management - Cases that do not fall into any one of the other tracks.      (X)

| | | |
|---|---|---|
| 10-31-07 | Eric J. Schreiner | Plaintiffs |
| **Date** | **Attorney-at-Law** | **Attorney for** |
| (215) 568-2000 | (215) 568-0140 | eschreiner@kleinbard.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

{00183753;v1} (Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WAREHOUSE EMPLOYEES LOCAL 169 AND : <br> EMPLOYERS JOINT PENSION FUND; JOSEPH : <br> LYONS, BRIAN RIECE, MICHAEL : <br> ZACHWIEJA, EDWARD McDERMOTT, : <br> RAYMOND TARNOWSKI, MICHAEL J. : <br> LORENCA, GEORGE CZUBA AND THEIR : <br> SUCCESSORS AS TRUSTEES OF THE : <br> WAREHOUSE EMPLOYEES LOCAL 169 : <br> AND EMPLOYERS JOINT PENSION FUND, : <br> : <br>      Plaintiffs, : <br> : <br>      v. : <br> : <br> PRINTERS, INC., and TPG GRAPHICS, LLC : <br> : <br>      Defendants. : | Civil Action No. |

### COMPLAINT

Plaintiffs, by their attorneys, Kleinbard Bell & Brecker LLP, bring this action against Defendants Printers, Inc. ("Printers") and TPG Graphics, LLC ("TPG") and in support thereof allege as follows:

### NATURE OF THE ACTION

1.     This is an action by Plan fiduciaries to: (i) compel an employer to pay withdrawal liability pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("ERISA"), 29 U.S.C. §1381 through 1405 and 1451; and (ii)  impose successor liability upon the employer's successor for the obligations of the employer.

2.      Printers has failed to make its five quarterly withdrawal liability payments of $6,108 due on October 1, 2006, January 1, 2007, April 1, 2007, July 1, 2007 and October 1, 2007, in the total amount of $30,540.

3.      On May 31, 2003, TPG entered into an Asset Purchase Agreement (the "APA") with Printers, pursuant to which it acquired all of the assets of Printers.

4.      Although the APA provided that TPG was assuming only two listed liabilities of Printers, following the execution of the APA, TPG in reality assumed all of the liabilities of Printers, including Printers obligation to make withdrawal liability payments.

5.      In essence, TPG simply moved Printers operations to New Jersey and continued Printers' business with the same employees serving the same customers.

6.      TPG is liable, as Printers' successor, for Printers' failure to make its withdrawal liability payments.

## JURISDICTION

7.      The jurisdiction of this Court is invoked pursuant to Sections 502(a), (e), (f) and (g) and 4301(a), (b) and (c) of ERISA, 29 U.S.C. §1132(a), (e), (f) and (g) and 1451(a), (b) and (c).  The Court also has supplemental jurisdiction over the successor liability claim pursuant to 28 U.S.C. §1367.

## VENUE

8.      As the Plan is administered within the Eastern District of Pennsylvania, this action is properly brought in this district pursuant to Sections 502(e)(2) and 4301 (d) of ERISA, 29 U.S.C. §§1132(e)(2) and 1451(d).

## THE PARTIES

9.      The Warehouse Employees Local 169 and Employers Joint Pension Fund (the "Fund") was established and maintains a plan (the "Plan") to provide retirement income to

employees for whom contributions are made by employers. As such, it is an "employee pension benefit plan" within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2). The Plan is maintained pursuant to one or more collective bargaining agreements between an employee organization and various employers, which require such employers to contribute to the Fund. As such, the Fund is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37).

10.     The Fund is administered by a Board of Trustees composed of an equal number of employer and employee representatives, as required by Section 302(c) (5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §186(c) (5). The Board of Trustees is the "plan sponsor" with respect to the Plan pursuant to Section 3(16)(B)(iii) of ERISA, 29 U.S.C. §1002(16)(B)(iii). The Fund maintains its offices and the Plan is administered at Davis Road and Oakwood Lane, Valley Forge, Pennsylvania 19482.

11.     Plaintiffs Joseph Lyons, Brian Riece, Michael Zachwieja, Edward McDermott, Raymond Tarnowski, Michael J. Lorenca and George Czuba ("Plaintiff Trustees") are members of the Fund's Board of Trustees. The Plaintiff Trustees exercise discretionary authority, control and responsibility with respect to management and administration of the Fund and Plan and disposition of Fund assets. As such, Plaintiff Trustees are fiduciaries with respect to the Plan, within the meaning of Section 3(21) of ERISA, 29 U.S.C. §1002(21).

12.     Upon information and belief, Printers, formerly known as Clinton Envelope & Paper Co., is a Pennsylvania corporation having had its principal places of business at 10 North 11th Street, Philadelphia, PA 19107. Upon information and belief, Printers only current address is 1251 Sequoia Road, Cherry Hill, New Jersey 08003.

13.     Printers was a party, directly or indirectly, to a collective bargaining agreement with Warehouse Employees Union Local 169.  Pursuant to said collective bargaining agreement, Printers was obligated to make contributions to the Fund on behalf of certain of its employees.  As such, Printers is an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).

14.     Upon information and belief, TPG is a New Jersey limited liability company having its principal places of business at Pennsauken Industrial Park, 9040 Pennsauken Highway, Pennsauken, NJ 08110.   Upon information and belief, TPG is the successor to Printers.

## FACTS

### A.   Printers Withdrawal Liability Under ERISA

15.     In or about May 2003, Printers withdrew from participation in the Plan, within the meaning of Section 4203(a) of ERISA, 29 U.S.C. §1383(a).

16.     As a result of withdrawal from the Plan, Printers became liable to the Fund for withdrawal liability in the amount of $98,620 pursuant to Section 4201 of ERISA, 29 U.S.C. §1381.

17.     After determining the amount of Printers' withdrawal liability, on or about July 28, 2003 the Fund notified Printers of the estimated amount of its withdrawal liability and of the schedule for liability payments and demanded payment in accordance with the schedule, as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§1382 and 1399(b)(1).  On or about December 1, 2003, the Fund notified Printers of the final amount of its withdrawal liability.  Copies of said notices to Printers ("Notice and Demand") are annexed hereto, and made a part hereof, as Exhibit "A".

18.     Pursuant to Section 4219(c) of ERISA, 29 U.S.C. §1399(c), and as provided in the Notice and Demand, Printers was required to make quarterly withdrawal liability payments in the amount of $6,108 for eighteen quarters and a final or 19th payment in the amount of $3,064.  The first payment was due on or before January 1, 2004.

19.     Printers made its first nine quarterly withdrawal liability payments for the period from January 1, 2004 through January 1, 2006.

**B.     Printers Failure to Make Withdrawal Liability Payments**

20.     Printers failed to make its quarterly withdrawal liability payment of $6,108 due April 1, 2006.

21.     On or about May 25, 2006, the Plaintiffs initiated suit against Printers for the April 1, 2006 payment.  See Warehouse Employees Local 169 and Employers Joint Pension Fund, et al. v. Printers, Inc., No. 2:06-cv-02218-RK (U.S.D.C., E.D. Pa.).

22.     On August 9, 2006, Plaintiffs obtained a default judgment in the amount of $10,067.26 against Printers.  A copy of the Order granting judgment against Printers in the amount of $10,067.26 is attached hereto, and made a part hereof, as Exhibit "B".

23.     Printers also failed to make its quarterly withdrawal liability payment of $6,108 due July 1, 2006.

24.     On or about July 12, 2006, Plaintiffs  initiated suit against Printers for the July 1, 2006 payment.  This lawsuit is currently pending, see Warehouse Employees Local 169 and Employers Joint Pension Fund, et al. v. Printers, Inc., No. 2:06-cv-03056-RK (U.S.D.C., E.D. Pa.).

25.     Printers also failed to make its five quarterly withdrawal liability payments of $6,108 due on October 1, 2006, January 1, 2007, April 1, 2007, July 1, 2007 and October 1, 2007.

26.     The total amount of these five missed withdrawal liability payments is $30,540.

**C.     TPG is the Successor to Printers**

**1.     The Asset Purchase Agreement**

27.     Upon information and belief, Robert Donner ("Donner") was at all relevant times the President of Printers.  Donner and his brother, Jay Donner, are the sole shareholders of Printers.

28.     On or about May 30, 2003, Printers entered into the APA.  A copy of the APA is attached hereto, and made a part hereof, as Exhibit "C".

29.     Upon information and belief, TPG was formed for the sole purpose of acquiring Printers.  TPG had no other ongoing business.

30.     Upon information and belief, TPG was formed and owned at the time of formation by Steven Rubin ("Rubin").

31.     Rubin and Donner were friends who had know each other for many years through the printing business.

32.     Pursuant to the APA, Printers agreed, *inter alia*, to sell its assets to TPG.  See APA at p.p. 1-2, §1.

33.     Pursuant to the APA, TPG also agreed to assume certain listed liabilities of Printers.  See id. at p.p. 2-3, §2.  The APA listed two assumed obligations:  (i) a vehicle loan with Beneficial Savings Bank in the amount of $13,338.84; and (ii) a vehicle loan with Beneficial Savings Bank in the amount of $13,108.56.  See id. at p. 3, §3.

34.     The APA further provided that TPG was not assuming any liabilities of Printers other than those specifically set forth in the APA.  See id. at p.p. 2-3, §2 and Exhibit A.

35.     TPG also agreed to pay Printers the total amount of $500,000.00 (the "Purchase Price").

36.     The Purchase Price was to be paid by delivery by TPG to Printers of a promissory note in the principal amount of $500,000.00 (the "Promissory Note"), which was to be repaid in five annual installments beginning on May 31, 2004 with interest at the annual rate of 5%.  See id. at p.p. 3-4, §4.  A copy of the Promissory Note is attached hereto, and made a part hereof, as Exhibit "D".

37.     TPG has not made any payments to Printers pursuant to the Promissory Note.

38.     Printers has not made any efforts to collect any monies that may be due under the Promissory Note.

39.     Printers ceased its operations after May 31, 2003.

## 2.     **TPG Continued Printers Business**

40.     As of June 2003, TPG took over the operations of Printers.

41.     Upon information and belief, after June 2003 TPG did business as Clinton Envelope & Paper Co., just as Printers had done prior to June 2003.

42.     TPG, doing business as Clinton Envelope & Paper Co., continued to utilize the computer system previously utilized by Printers.

43.     After June 2003 TPG did business with the same customers that Printers had done business with prior to June 2003.

44.     As of June 2003, Donner became the general manager of TPG, a position he still holds today.  Prior to June 2003, Donner served as the general manager of Printers.

45.     As of June 2003, Linda Donner, Donner's wife, became the secretary/bookkeeper for TPG.  Prior to June 2003, she served as secretary/bookkeeper of Printers.

46.     As of June 2003, approximately four additional former employees of Printers became employees of TPG.

47.     Upon commencing its operations in June 2003, TPG did not have any employees that were not former employees of Printers.

48.     Upon information and belief, Rubin was not involved in the operations of TPG.

**3.     TPG Moved Printers Operations to New Jersey to a Building Purchased for Printers Operations Prior to the APA**

49.     Prior to entering into the APA, Printers was located in a building at 310 North 11th Street, Philadelphia, Pennsylvania (the "Philadelphia Building").

50.     The Philadelphia Building was owned by 10th and Lombard Corporation ("10th and Lombard"), a company owned 100% by Donner's daughter.

51.     Donner was in charge of 10th and Lombard's operations.

52.     10th and Lombard's only asset was the Philadelphia Building.

53.     10th and Lombard sold the Philadelphia Building during the latter part of 2002.

54.     At the end of 2002, 10th and Lombard purchased a building located at  9040 Pennsauken Highway, Pennsauken, New Jersey (the "Pennsauken Building").

55.     10th and Lombard purchased the Pennsauken Building specifically so that Printers could conduct its operations there.

56.     Upon information and belief, as part of the asset sale, the parties had an understanding that TPG would operate out of the Pennsauken Building.

57.     As of June 2003, TPG, doing business as Clinton Envelope & Paper Co., began operations in the Pennsauken Building.

58.     After May 31, 2003, while he was the general manager of TPG, Donner continued to collect Printers' trade receivables from TPG's office at the Pennsauken Building.

### 4.     TPG Assumed All of Printers Liabilities After May 31, 2003

59.     Although the APA provided that TPG would only assume two specific listed liabilities of Printers, in reality TPG continued to pay numerous other debts of Printers and assumed virtually all, if not all, of Printers' liabilities.

60.     TPG either directly paid off or provided Printers with the money to pay off Printers trade payables that existed as of May 31, 2003, in the total amount of approximately $241,000, at the direction of Donner.

61.     Printers had a line of credit with Mellon Bank that it used for operating capital on which it owed approximately $43,000 as of May 31, 2003.

62.     After May 31, 2003, TPG made payments on this line of credit until it was paid off in 2007.

63.     At the time of the APA, Printers was making payments on an equipment loan with Commerce Bank that Robert and Linda Donner personally had obtained to finance the purchase of a printing press utilized by Printers.  The printing press was acquired by TPG pursuant to the APA.  As of May 31, 2003, the balance on this loan was approximately $143,000.

64.     After May 31, 2003, TPG made monthly payments on this equipment loan with Commerce Bank.

65.     TPG made these payments by writing checks payable to Linda Donner for the amount of the monthly payment because the monthly payment was automatically deducted from a personal account that Linda and Robert Donner maintained at Commerce Bank.  The monthly

payment was automatically deducted from the Donners' personal account because this process allowed the Donners to obtain a lower interest rate on the loan.

66.     The Donners subsequently refinanced this loan with Sterling Bank in 2005. It was refinanced in the total amount of $200,000 with the additional funds being obtained to provide capital to TPG. TPG continues to make monthly payments on the refinanced loan.

67.     Prior to May 31, 2003, Printers entered into a Stock Redemption Agreement with Jay Donner, pursuant to which Printers had the right to acquire the shares in Printers owned by Jay Donner.

68.     After May 31, 2003, TPG provided Printers with the funds to make payments to Jay Donner pursuant to the Redemption Agreement and, upon information and belief, continues to do so to date.

69.     TPG provided Printers with funds for this purpose by writing checks to Printers. Printers would then make payments to Jay Donner using checks drawn on a Printers bank account that remained in existence after May 31, 2003.

70.     At the time of the parties entered into the APA, Printers had an "officer loan" that Donner had provided to it in the amount of approximately $61,000.

71.     Upon information and belief, after May 31, 2003, TPG assumed Printers obligation to repay this loan but it has not been repaid.

72.     Since May 31, 2003, and prior to the time Printers stopped making withdrawal payments to the Fund, TPG also has provided Printers with the funds necessary to make its withdrawal payments to the Fund.

73.     In addition, since May 31, 2003 TPG, has provided Printers with funds necessary to pay any other continuing obligations Printers may have.

### 5.   Rubin Sells TPG to Linda Donner for $1

74.   In  January 2005, Linda Donner purchased TPG from Rubin.

75.   Upon information and belief, the total purchase price was $1.

76.   Upon information and belief, at present, Linda Donner is the sole owner of TPG.

## COUNT I - ACTION UNDER ERISA FOR
## WITHDRAWAL LIABILITY AGAINST PRINTERS

77.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 of this Complaint with the same force and effect as if set forth at length herein.

78.   Printers has failed to make its five quarterly withdrawal liability payments of $6,108 due on October 1, 2006, January 1, 2007, April 1, 2007, July 1, 2007 and October 1, 2007.

79.   The total amount of these missed withdrawal liability payments is $30,540.

80.   Printers has disputed the amount of withdrawal liability demanded by Plaintiffs.

81.   Printers has initiated arbitration, as required under Section 4221(a) of ERISA, 29 U.S.C. §1401(a), in connection with its dispute of the amount of its withdrawal liability. Arbitration hearings have not been scheduled.

82.   Pursuant to Section 4221(d) of ERISA, 29 U.S.C. §1401(d), Printers is required to continue making its quarterly withdrawal payments while the arbitration is pending.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order and judgment:

(a)   Directing Printers to pay to the Fund the sum of $30,540.00;

(b)   Directing Printers to pay to the Fund interest on the sum set forth in paragraph (a) herein, computed from the date on which Printers failed to

make each of its quarterly withdrawal liability payments at the rates based upon prevailing market rates for comparable obligations in accordance with the regulations prescribed by the Pension Benefit Guaranty Corporation, as provided in Article 13.2 of the Plan.

(c)     Directing Printers to pay to the Fund liquidated damages provided under the Plan and under §502(g)(2) of ERISA, 29 U.S.C.§1132(g)(2) in the amount of 20% of the five unpaid quarterly installments of $30,540, or $6,108.00.

(d)     Directing Printers to pay to the Fund the reasonable attorneys' fees and costs of this action pursuant to Sections 502(g)(2)(D) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2)(D) and 1451(b); and

(e)     Granting such other and further relief as the Court deems appropriate.

**COUNT II – SUCCESSOR LIABILITY AGAINST TPG**

83.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 82 of this Complaint with the same force and effect as if set forth at length herein.

84.     By continuing to directly pay Printers' liabilities after May 31, 2003, and/or provide Printers with funds to pay these liabilities, TPG implicitly agreed to assume Printers' liabilities, including its obligation to make withdrawal liability payments.

85.     As set forth in detail above, TPG was merely a continuation of Printers.

86.     As set forth in detail above, a de facto merger occurred between TPG and Printers.

87.     As set forth in detail above, the transfer of Printers' assets to TPG was without adequate consideration and no provisions were made for the creditors of Printers.

88.     Accordingly, TPG is liable for Printers liabilities as a successor company, including Printers' withdrawal liability to the Fund.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order and judgment:

<ol type="a">
<li>

Directing TPG to pay the Fund the sum of $10,067.26 to satisfy the judgment Plaintiffs previously obtained against Printers;
</li>
<li>

Directing TPG to pay to the Fund the sum of $30,540.00;
</li>
<li>

Directing TPG to pay to the Fund interest on the sum set forth in paragraph (b) herein, computed from the date on which Printers failed to make each of its quarterly withdrawal liability payments at the rates based upon prevailing market rates for comparable obligations in accordance with the regulations prescribed by the Pension Benefit Guaranty Corporation, as provided in Article 13.2 of the Plan.
</li>
<li>

Directing TPG to pay to the Fund liquidated damages provided under the Plan and under §502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2) in the amount of 20% of the five unpaid quarterly installment of  $30,540, or $6,108.00.
</li>
<li>

Directing TPG to pay to the Fund the reasonable attorneys' fees and costs of this action pursuant to Sections 502(g)(2)(D) and 4301(b) of ERISA, 29 U.S.C. §1132(g)(2)(D) and 1451(b);
</li>
<li>

Declaring that TPG is liable for any judgment Plaintiffs obtain against Printers in the pending action captioned <u>Warehouse Employees Local 169 and Employers Joint Pension Fund, et al. v. Printers, Inc.</u>, No. 2:06-cv-03056-RK (U.S.D.C., E.D. Pa.);
</li>
</ol>

(g)    Declaring that TPG is liable for any other withdrawal liability payments that Printers fails to make; and

(h)    Granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

KLEINBARD BELL & BRECKER LLP

/s/ Eric J. Schreiner
Eric J. Schreiner, Esquire (ES1579)
Paul E. Bomze, Esquire
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA  19103
215-568-2000
215-568-0140 (facsimile)

*Attorneys for Plaintiffs*

Dated:  October 31, 2007

# EXHIBIT A

# KLEINBARD
## BELL○BRECKER LLP

**Direct Dial**
**(215) 496-7221**

July 28, 2003

**CERTIFIED MAIL, RETURN RECEIPT**

Clinton Envelope & Paper Co.
Pennsauken Industrial Park
9040 Pennsauken Highway
Pennsauken, NJ 08109

Attention:    Robert Donner

Re:    **Warehouse Employees Local 169 and Employers**
**Joint Pension Plan – Demand for Payment of**
**Withdrawal Liability**

Gentlemen:

We are counsel to the Trustees of the Warehouse Employees Local 169 and Employers Joint Pension Plan ("Plan"). Clinton Envelope & Paper Company ("Company") has been a contributing employer to the Plan. The Trustees of the Plan have determined that the Company has completely withdrawn from the Plan. This constitutes a complete withdrawal under the provisions of the Multiemployer Pension Plan Amendments Act of 1980, amending the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that in the event there is a complete withdrawal from a Pension Plan by a contributing employer, that employer is liable to the Plan for its proportionate share of the Plan's unfunded vested benefits.

The Trustees of the Plan have assessed withdrawal liability against the Company and have determined that the Company's proportionate share of the unfunded vested benefits is $135,424. After deducting the sum of $14,576 under the de minimis rule, the net single sum due is $120,848. Computed in accordance with the provisions of ERISA, the amortization schedule associated with that amount requires the Company to pay 23 quarterly installments of $6,108 each, plus a final quarterly installment of $4,455. The first quarterly installment

LAW OFFICES

*Main* 215.568.2000    1900 Market Street, Suite 700
*Fax* 215.568.0140    Philadelphia, PA 19103
www.kleinbard.com

# Kleinbard
## Bell◯Brecker LLP

Page 2

is due August 15, 2003. These figures include interest due on the unpaid portion of the liability during the payment period. The same interest rate is also utilized by the Plan for funding purposes and the determination of the unfunded vested liability.

The Plan uses the presumptive method of computing withdrawal liability pursuant to Section 4211(b) of ERISA. The calculations were based on a 2003 withdrawal and include periods up through December 31, 2001 only. As soon as the Plan's actuary completes the withdrawal liability calculations as of December 31, 2002, the Plan will notify the Company of the final amount and schedule of payments. In the interim, the Company is required to begin making payments in accordance with the schedule set forth above. I am enclosing a copy of a letter from the Plan's actuary dated May 14, 2003.

This letter is intended as a demand for payment in accordance with the above schedule.

Within ninety (90) days of the receipt of this letter, the Company has the opportunity to:

    1.    Ask the Trustees to review any specific matter relating to the determination of the Company's liability and payment schedule;

    2.    Identify any inaccuracy in the determination of the amount of any unfunded vested benefit allocated to the Company; and

    3.    Furnish any additional relevant information to the Trustees.

ERISA requires that the Company start making these payments on the date indicated above even if the Company requests a review or appeals a determination of the amount of the liability or of the schedule set forth above. If the Company fails to make, when due, any payment in accordance with the foregoing schedule and if the failure is not cured within sixty (60) days after the Company receives written notification of such failure, the Plan will require immediate payment of the outstanding amount of the liability plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely

# Kleinbard
## Bell⭕Brecker LLP

Page 3

made.  If the Plan is required to start suit to collect any amount due, the Company will also be liable for attorneys' fees, costs and liquidated damages.

Should the Company dispute the foregoing demand, Company has a right to appeal this decision to arbitration in accordance with the arbitration provisions of ERISA.  This procedure must be followed should any dispute regarding the foregoing exist.

Very truly yours,

PAUL E. BOMZE

PEB/jt
Enclosure

CC:   Clinton Envelope & Paper Company
      10 North 11th Street
      Philadelphia, PA 19107
      (Via Certified Mail, Return Receipt)

      Mr. Lawrence McLaughlin
      Mr. Joseph Lyons
      Mr. James Brennan
      Bernard N. Katz, Esquire
      James J. McKeogh, FSA

# Kleinbard
## Bell◯Brecker LLP

**Direct Dial**
**(215) 496-7221**

December 1, 2003

## CERTIFIED MAIL, RETURN RECEIPT

Mr. Richard Donner
c/o Printers, Inc.
1251 Sequoia Road
Cherry Hill, NJ 08003

Re:     **Warehouse Employees Local 169 and**
**Employers Joint Pension Plan - Printers,**
**Inc. - Withdrawal Liability**

Dear Mr. Donner:

Please consider this letter as a response to the request for review dated October 26, 2003 made by Printers, Inc. ("Company") which also trades under the name of Clinton Envelope & Paper Co.

The numbered paragraphs listed below correspond to the numbered paragraphs of the Company's request for review dated October 26, 2003.

1.     I am enclosing herewith the final withdrawal liability calculations now that the actuary has completed the withdrawal liability calculations as of December 31, 2002 which are based on a 2003 withdrawal. The previous calculations only included periods up through December 31, 2001 because they were the only ones available. Enclosed is a copy of the letter from the Plan's actuary dated November 14, 2003 which indicates how the calculation was made. Based on the final calculations, the withdrawal liability amounts to $98,620 after the application of the de minimus rule. The withdrawal liability is payable in 18 quarterly installments of $6,108, plus one additional payment of $3,064. Please note that the census data used in the final calculation of the withdrawal liability was the same as that used by the Plan's actuary in performing the January 1, 2003 actuarial valuation. Enclosed are the contributions for Printers, Inc. and the contribution hours for Printers Inc. and the Plan as a whole. The Plan actuary believes that the data is accurate and appropriate and that the calculation and methods used are correct.

LAW OFFICES

*Main* 215.568.2000  |  1900 Market Street, Suite 700
*Fax* 215.568.0140  |  Philadelphia, PA 19103
www.kleinbard.com

# Kleinbard
## Bell○Brecker LLP

Page 2

     2.     The calculations were based on a withdrawal by the Company in May of 2003. Please note that even if the exact date of withdrawal is not May of 2003, the calculation would not change so long as the date is during the calendar year 2003.

     3.     The Plan actuary has advised that the calculations correctly and appropriately apply all provisions of the law including any exceptions that may be appropriate.

     4.     The single sum withdrawal liability, as revised, and the payment schedule, as revised, are accurate.

                 Very truly yours,


                 PAUL E. BOMZE

PEB/jt
Enclosure

CC:   Mr. Lawrence McLaughlin
       James J. McKeogh, FSA
       Bernard N. Katz, Esquire
       Mr. James Brennan
       Mr. Raymond Tarnowski
       (w/enclosure)

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WAREHOUSE EMPLOYEES LOCAL 169 AND :
EMPLOYERS JOINT PENSION FUND; JOSEPH :
LYONS, BRIAN RIECE, LARRY VOGELMAN, :
EDWARD McDERMOTT, RAYMOND :
TARNOWSKI, ROBERT H. BARRON, GEORGE :
CZUBA AND THEIR SUCCESSORS AS :
TRUSTEES OF THE WAREHOUSE :
EMPLOYEES LOCAL 169 AND EMPLOYERS :
JOINT PENSION FUND, :

        Plaintiffs, :

        v. :

PRINTERS, INC., :

        Defendant. :

Case No. 2:06-cv-02218-RK

FILED

AUG 9   2006

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## ORDER

AND NOW, this ___9th___ day of ___Aug___, 2006, it is hereby **ORDERED** that a

judgment by default is entered in favor of Plaintiffs and against Defendant Printers, Inc. in the

total amount of $10,067.26.

_Robert F. Kelly_

A TRUE COPY CERTIFIED TO FROM THE RECORD

DATE: ___SEP 27 2006___

ATTEST: ___Steve Towar___

DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

{00074205;v1}

# EXHIBIT C

# ASSET PURCHASE AGREEMENT

THIS AGREEMENT is made this 30th day of May, 2003, by and between PRINTERS, INC., a Pennsylvania corporation (hereinafter referred to as "Seller"), which also trades under the name Clinton Envelope & Paper Co., and TPG GRAPHICS, LLC, a New Jersey limited liability company (hereinafter referred to as "Buyer").

## WITNESSETH

The Buyer desires to purchase and receive from the Seller, and the Seller desires to sell and assign to the Buyer, those assets of Seller stated in Paragraph 1 below; and

The Buyer desires to accept and assume from the Seller, and the Seller desires to assign to the Buyer, those obligations of Seller stated in Paragraph 2 below.

NOW, THEREFORE, intending to be legally bound and in consideration of the mutual promises and conditions herein contained the parties hereby agree as follows:

1.      Purchase and Sale.

(a)      On the terms and subject to all of the conditions of this Agreement, the Buyer shall purchase from the Seller, and the Seller shall sell, transfer and deliver to the Buyer at the Closing, as hereinafter defined:

AssetPurchaseAgr./ Printers To TPG

(i)   all of the Seller's good and saleable paper and envelope stock in inventory, excluding any stock purchased and owned by Seller's customers.

(ii)  all presses, equipment, supplies, vehicles and all other production assets relating to or used or useable in the Seller's former business;

(iii) all of Seller's customer lists, trade goodwill and related intangibles; and

(iv)  the right to use the names Clinton Envelope, Clinton Envelopes and Clinton Envelope & Paper Co., (all of the foregoing set forth in Paragraphs 1(a)(i), (ii), (iii) and (iv) being sometimes hereinafter collectively referred to as the "Assets").

(b)  Notwithstanding any provision to the contrary contained herein, no assets of Seller other than as identified in Section 1(a) above are purchased by or transferred to Buyer, including, but not limited to, cash, prepaid expenses, deposits, refunds, bank accounts, accounts receivable, notes receivable, all books, records and accounts, whether electronically stored or otherwise, and any amounts which may be recoverable by Seller in connection with lawsuits and other unliquidated claims to which it is or may be a party.

2.   <u>Assumption of Certain Obligations of Seller by Buyer.</u>

At   the   Closing,   the   buyer   shall   assume   and   agree   to

perform, pay and discharge, as and when due or as extended, those certain obligations of Seller set forth on Exhibit A attached hereto and made a part hereof, such obligations herein referred to as the "Assumed Obligations".

    3.    <u>No Liabilities or Obligations of Seller Other Than As Set Forth in Paragraph 2 Assumed by Buyer.</u>

    The Buyer will not assume and will not discharge or be liable for any debts, liabilities, or obligations of the Seller, except as specifically set forth in Paragraph 2 above, including, without limitation, any:   (a) liabilities or obligations of the Seller to its trade creditors, other creditors or stockholders as such or as creditors;  (b) liabilities or obligations of the Seller with respect to any transactions occurring after the Closing;  (c) sales or income tax or other liabilities or obligations of the Seller incurred in connection with its continuation, liquidation or dissolution;  (d) liability to any landlord or lessor on account of any lease transaction;   (e) liability to any business broker in connection with this transaction; or (f) any contingent liabilities or obligations of the Seller.

    4.    <u>Purchase Price</u>.

    (a) Subject to the terms and conditions of this Agreement and in full consideration for the conveyance and transfer of the Assets to the Buyer and the assumption of the Assumed    Obligations as provided herein, the

Purchase Price shall be Five Hundred Thousand Dollars ($500,000.00).

(b) The Purchase Price shall be paid at Closing, as provided herein, by the delivery by Buyer to Seller of Seller's promissory Note in principal amount of $500,00.00 and bearing interest at rate of five (5) percent per year with a maturity date of five years from Closing (herein, the "Note").

5.      Closing.

(a) The closing ("Closing") shall be on June 1, 2003, or such other date as the parties hereto shall mutually agree and Closing shall be deemed effective as of June 1, 2003.  The time and place of Closing shall be at such time and place as the parties hereto shall mutually agree.

(b) At the Closing Seller will deliver to the Buyer:

(i) A Bill of Sale and Assignment and other good and sufficient instruments as shall be effective to vest in the Buyer good, absolute and marketable title to the Assets being transferred to the Buyer by the Seller, free and clear of all liens, charges, encumbrances, and restrictions whatsoever, except with respect to those assets encumbered by the Assumed Obligations; and

(ii) Copies of all Seller's customer lists and supporting documents applicable thereto and to the Assets and the Assumed Obligations.

(c) At the Closing, Buyer shall deliver to Seller the Note referred to in Section 4(b)(i);

(d) On June 1, 2003, Seller shall deliver to Buyer all of the Assets of the Seller, and an executed original of this Agreement complete with all Exhibits and Schedules attached thereto.

(e) On June 1, 2003 Buyer shall deliver to Seller an executed original of this Agreement complete with all Exhibits attached thereto and an executed original of the Note.

6.      Representations and Warranties by Seller.

The Seller hereby represents and warrants to the Buyer as follows:

(a) The Seller is a corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania and has all the requisite corporate power and authority to carry on its business as it is presently being conducted, to enter into this Agreement, and to carry out and perform the terms and provisions of this Agreement.

(b) There are no actions, suits or proceedings pending or threatened against the Seller or affecting any of its properties or rights, at law or in equity or before any federal, state, municipal or other governmental agency or instrumentality, domestic or foreign, nor is the Seller or any of its officers or directors, to their actual knowledge,   aware of any basis for any such with

- 5 -

respect to any order or decree of any court or of any such governmental agency or instrumentality.

(c) The Seller has good, absolute, and marketable title to all of the Assets being sold to the Buyer pursuant to this Agreement.   Except for the Assumed Obligations, such assets are subject to no lease, mortgage, pledge, lien, charge, security interest, encumbrance, or restriction whatsoever.

(d) The introduction of the Seller to the Buyer and all negotiations on the part of the Seller relative to this Agreement and the transactions contemplated hereby have been effected and carried on by the Seller directly with the Buyer without the intervention or participation of any broker, finder or other person.

(e) The representations and warranties contained in and made part of this Agreement shall only survive the Closing for a period of eighteen (18) months.

7.     Representations and Warranties By Buyer.

Buyer hereby represents and warrants to Seller as follows:

(a) Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New Jersey, and has the requisite power and authority to carry on its business as presently

- 6 -

conducted, to enter into this Agreement and to carry out the transactions contemplated hereby.

(b) The execution and delivery of this Agreement by Buyer, and the consummation by Buyer of the transactions contemplated hereby and thereby, have been duly authorized by all requisite actions on the part of Buyer. This Agreement, when duly executed and delivered by the proper representative of Buyer, will constitute valid and binding obligations of Buyer.

(c) Neither the execution nor delivery of this Agreement by Buyer, nor the consummation by Buyer of the transactions contemplated hereby:

(i) constitute or will constitute a violation of or a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or conflict or will conflict with, any term or provision of any material contract, commitment, indenture, lease or other material agreement, arrangement or understanding, or any other restriction of any kind to which Buyer is a party or by which Buyer or its property or assets are bound or affected; or

(ii) constitute or will constitute a material violation of any statutes or laws or any rule, regulation, or order, writ, injunction or decree of any court or any governmental authority.

- 7 -

(d) There are no actions, suits or proceedings pending or threatened against Buyer which, if adversely determined, could have a material adverse effect upon Buyer's ability to consummate the transactions contemplated by this Agreement. The Buyer is not in default with respect to any order or decree of any court or of any governmental agency or instrumentality.

(e) The introduction of the Buyer to the Seller and all negotiations on the part of the Buyer with the Seller relative to this Agreement and the transactions contemplated hereby have been effected and carried on by the Buyer directly with the Seller without the intervention or participation of any broker, finder or other person.

(f) All representations, warranties and agreements of the Buyer contained herein or in any agreement, documents, statements, certificate or other instrument referred to herein or delivered at the Closing in connection with the transactions contemplated hereby shall survive the Closing Date.

8.    <u>Seller Indemnity</u>.

The Seller shall and hereby agrees to indemnify, defend and hold harmless the Buyer against and in respect of the following (hereinafter called a "Loss" or "Losses"), in accordance with the terms and conditions of this Paragraph 8:

(a) any and all liabilities for or claims attributable to:

(i)  the conduct by Seller of its business prior to Closing (other than with respect to the Assumed Obligations);

(ii) the conduct by the Seller of its business after the Closing;

(iii) all liabilities and obligations of Seller not included in the Assumed Obligations; and

(iv) a misrepresentation or breach of warranty under Paragraph 6 herein.

(b) Any and all losses, damages, actions, suits, proceedings, investigations, inquiries, demands, assessments, judgments, interest, penalties, costs and expenses, including without limitation reasonable attorneys' and experts' fees and expenses arising out of any liability or claim with respect to which Seller is obligated to indemnify Buyer pursuant to Paragraph 8(a).

(c) Notwithstanding anything to the contrary contained in this Agreement, no claim may be made or lawsuit instituted by Buyer under the provisions of this Paragraph 8 after eighteen (18) months from the date of Closing.

(d) Notwithstanding anything to the contrary contained in this Agreement, indemnification pursuant   to this Paragraph 8 shall be the sole

- 9 -

and exclusive remedy of the Buyer for recovery of monetary damages of any nature whatsoever against the Seller.

(e) The amount which Seller is required to pay to Buyer pursuant to this Paragraph 8 shall be reduced by any:

(i)   insurance proceeds recovered by Buyer in reduction of the related Loss;

(ii)  the tax benefit related to such Loss; and/or

(iii) any credit or recovery from a third party received by or paid to or for the benefit of Buyer as a result of such Loss.

9.      <u>Buyer Indemnity</u>.

Buyer shall and hereby agrees to indemnify, defend and hold harmless the Seller, its members and employees against and in respect of any of the following (hereinafter called "Seller's Loss" or "Seller's Losses"), in accordance with the terms and conditions of this Paragraph 9:

(a) All damages, losses and deficiencies that result from or arise out of:

(i)   the inaccuracy of any representations or warranty made;

(ii)  any misrepresentation, breach of warranty or breach or nonfulfillment of any covenant to be performed on the part of the Buyer under this     Agreement,     assumption     instrument, or any Schedule, Exhibit

- 10 -

or other instrument furnished or to be furnished to Seller pursuant to this Agreement, it being the agreed intention of the parties that the Buyer shall be completely responsible for, and the Seller shall be deemed to have relied upon, such representations, warranties, covenants, agreements, schedules, Exhibits and instruments;

(b) any and all liabilities or claims to the extent attributable to the conduct by the Buyer of its business subsequent to the Closing;

(c) the Buyer's failure to pay the Assumed Obligations when due and payable in accordance with their terms;

(d) any and all losses, damages, actions, suits, proceedings, investigations, inquiries, demands, costs and expenses, including without limitation reasonable attorneys', consultant's, engineer's, investigator's and expert's fees and expenses, incident to any of the foregoing;

10.    <u>Covenants Not to Compete.</u>

In consideration for Buyer's covenants and obligations hereunder, Seller agrees;

(a) That it will not, directly or indirectly, own, manage, operate, join, control, or participate in the ownership, management, operation or control of, or be connected with, in any manner, any business in the Philadelphia Metropolitan area, that    shall be in competition with the

business of the Seller as such business is presently conducted or shall be conducted throughout the effectiveness of this Agreement for a period of three (3) years following the Closing; and

(b) That, in the event of the breach or threatened breach by the Seller of the foregoing restrictive covenant, the Seller, acknowledges hereby that Buyer may not have adequate remedy at law, and that such breach or threatened breach may be restrained by equitable relief.

11. <u>Events of Default</u>

(a) The following shall constitute an event of default ("Event of Default") hereunder:

(i)   The failure of the Buyer to make any payments to Seller required hereunder or under the Note on the date such payments are due if such failure is not cured within ten (10) days after written notice of said default is sent by Seller and is received by Buyer;

(ii) The Buyer shall:

(A) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian or the like of itself or of its property;

(B) admit in writing its inability to pay its debts generally as they become due;

- 12 -

(C) make a general assignment for the benefit of creditors;

(D) be adjudicated a bankrupt or insolvent; or

(E) commence a voluntary case under the federal bankruptcy laws of the United States of reorganization, make an arrangement with creditors or seek any order for relief to take advantage of any insolvency law; or take any action for the purpose of effecting any of the foregoing; or if without the application, approval or consent of the Seller, a proceeding shall be instituted in any court of competent jurisdiction, seeking in respect of the Buyer an adjudication in bankruptcy, reorganization, dissolution, winding up, liquidation, a composition or arrangement with creditors, a readjustment of debts, the appointment of a trustee, receiver, or liquidator or custodian or the like of the Buyer or of all or any substantial part of its assets, or other like relief in respect thereof under any bankruptcy or insolvency law, and, if such proceeding is being contested by the Buyer in good faith, the same shall continue undismissed, or pending and unstayed, for any period of seventy-five (75) consecutive days; or

(iii) The Buyer shall commit a material breach of the Buyer's obligations hereunder and such breach continues for a period of thirty (30) days after receipt from Seller of    written notice thereof.

- 13 -

(b) Upon the occurrence of an Event of Default hereunder, the Seller is entitled to:

(i)    all amounts payable and accrued hereunder or under the Note to the date of the Event of Default;

(ii)   a release of the Seller from all obligations hereunder; and

(iii)  compensation for damages which are a result of such breach.

12.    <u>Miscellaneous.</u>

(a) This Agreement shall not be assignable by the Seller or Buyer, without the consent of the other.  Nothing in this Agreement, expressed or implied, is intended to confer on any person, other than the parties hereto and their successors, any rights or remedies under or by reason of this Agreement.

(b) Each of the parties shall bear all expenses incurred by them in connection with this Agreement and in the consummation of the transactions contemplated hereby and in preparation thereof.

(c) This Agreement may be amended or modified at any time and in all respects, or any provisions may be waived by an instrument in writing executed by the Buyer and the Seller or by either of them in the case of a waiver.

- 14 -

(d) Any notices or other communications required or permitted hereunder shall be sufficiently given if delivered personally or sent by registered or certified mail, postage prepaid, addressed to the Seller at #1251 Sequoia Road, Cherry Hill, NJ 08003, or to the Buyer at 9040 Pennsauken Highway, Pennsauken, NJ 08110, or at such other address as shall be furnished in writing by any party to the others, and shall be deemed to have been given as of the date so delivered or deposited in the United States Mail as the case may be.

(e) It is the intention of the parties that the substantive laws of New Jersey shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties.

(f) Article, paragraph and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(g) This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

(h) All personal pronouns used in this Agreement shall include the other genders whether used in the masculine, feminine or neuter gender, and the singular shall include the plural whenever and as often as may be appropriate.

(i)   All the terms and provisions of this Agreement shall be binding and inure to the benefit of, and be enforceable by, the Seller and the Buyer and their respective successors.

(j)   The Buyer and the Seller agree to keep confidential the terms of this Agreement other than the fact that the Buyer has purchased Seller's Assets.

SELLER:     PRINTERS, INC.

By: _____

Robert Donner, President

BUYER:     TPG GRAPHICS, LLC

By: _____

Steven Rubin, Managing Member

- 16 -

Asset Purchase Agreement
Seller:  Printers, Inc.
Buyer: TPG Graphics, LLC
May 30, 2003

EXHIBIT A

ASSUMED OBLIGATIONS

1.     Beneficial Savings Bank
       Loan A/C #341001290640
       Principal Amt: $13, 338.84
       [Secured by title to 2001 Ford Windstar
       Mini-Van, Ser. # 2FMDA57481
       BA64660]

2.     Beneficial Savings Bank
       Loan A/C #341001290657
       Principal Amt: $13,108.56
       [Secured by title to 2001
       Ford Windstar Mini-Van,
       Ser # 2FMDA57451BA15061]

# EXHIBIT D

COPY

## *PROMISSORY NOTE*

$500,000.00                                     Date:  June 01, 2003

For value received, the undersigned TPG Graphics, LLC (the "Promisor") promises to pay to the order of Printers, Inc. (the "Payee"), at 1251 Sequoia Road, Cherry Hill, NJ 08003, (or at such other place as the Payee may designate in writing) the sum of $500,000.00 with interest from June 01, 2003, on the unpaid principal at the rate of 5 % per annum.

Unpaid principal after the Due Dates designated below shall accrue interest at a rate of
10 % annually until paid.

Promisor executes and delivers this Note to Payee pursuant to the terms of that certain Asset Purchase Agreement effective of even date herewith, attached hereto and incorporated herein and hereby.

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

Due Dates: Principal and accrued interest under this Note shall be due and made in five (5) annual installments commencing May 31, 2004.

The Promisor promises to pay a late charge of $100.00 for each installment that remains unpaid more than 30 day(s) after its due date.  This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty.

If any installment is not paid when due, the remaining unpaid balance and accrued interest shall become due immediately at the option of the Payee.

The Promisor reserves the right to prepay this Note (in whole or in part) prior to the due date with no prepayment penalty.

If any payment obligation under this Note is not paid when due, the Promisor promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

If any of the following events of default occur, this Note and any other obligations of the Promisor to the Payee, shall become due immediately, without demand or notice:

Page 1 of 2

Promissory Note – TPG to Printers

**COPY**

1) the failure of the Promisor to pay the principal and any accrued interest in full on or before the Due Dates;

2) the filing of bankruptcy proceedings involving the Promisor as a Debtor;

3) the application for a receiver for the Promisor;

4) the making of a general assignment for the benefit of the Promisor's creditors;

5) the insolvency of the Promisor; or

6) the misrepresentation by the Promisor to the Payee for the purpose of obtaining or extending credit.

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

All payments of principal and interest on this Note shall be paid in the legal currency of the United States.   Promisor waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

No renewal or extension of this Note, delay in enforcing any right of the Payee under this Note, or assignment by Payee of this Note shall affect the liability of the Promisor.   All rights of the Payee under this Note are cumulative and may be exercised concurrently or consecutively at the Payee's option.

This Note shall be construed in accordance with the laws of the State of New Jersey.

Signed this _1st_ day of _June_____, 2003, Pennsauken, NJ.

Promisor
TPG Graphics, LLC

By: _____
      Steven Rubin